New Jersey Department of Labor,
Workmen's Compensation Bureau.

DONATO CIRCELLI, PETITIONER, v. GASPER FALCO, RESPONDENT.

Decided February 15, 1939.

For the petitioner, *Jay Spielman* (*David Roskein,* of counsel).

For the respondent, *George E. Meredith.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

It appears from the record that this matter was previously before this bureau at which time a compromise agreement was entered into, and the agreement was approved and reduced to a determination and rule for judgment entered on July 28th, 1936. Under that agreement the petitioner was paid fifteen weeks compensation based on three per cent. of total permanent disability.

A second petition was filed alleging increased disability and further alleging that the allowance provided by the previous order was inadequate. These are the two issues involved in the present proceeding.

No useful purpose would be accomplished by reciting in detail the testimony of the various witnesses. It is sufficient

to say that a number of witnesses, both lay and expert, appeared on behalf of both parties.

It is undisputed that the petitioner was struck in the head by a hammer which fell a distance of approximately six feet, and this accident resulted in a laceration about one inch in length on the crown of the petitioner's head. The petitioner testified that he was dazed by this blow and there is even a suggestion in his testimony that he fainted at the time. He also testified that he had terrific pains in the head following this incident and that ever since he has suffered from severe headaches, dizzy spells, and many other subjective complaints. The petitioner further testified that he did no work for the rest of the day following this accident which occurred at ten-thirty in the morning, and that he did only very light work at intervals for the rest of the week, this work consisting mainly of sweeping as the occasion arose.

All of the doctors appearing for the petitioner testified that the petitioner suffered a large percentage of disability which estimates of disability were based upon the doctor's findings plus the subjective complaints of the petitioner. It was their opinion that the petitioner had suffered a brain lesion in the form of a laceration or bleeding of the brain substance, which in turn, produced the symptoms complained of. It is significant to note, however, from their testimony that very few, if any, objective neurological manifestations were found, and the doctors' opinions, in a great measure, were based upon the petitioner's subjective complaints.

The case, therefore, resolves itself largely into a question of determining the credibility of the petitioner. While the petitioner claimed that he fainted, his foreman saw him within a very few minutes and the man gave no indication then of being dazed and, in fact, was reluctant about having his injury treated by a physician. The physician who was produced by the respondent and who saw the petitioner within an hour of the happening observed no evidence of the prior unconsciousness and, quite as important, got no history of unconsciousness from the patient. It further appears that the man claimed that he did only the lightest kind of work for a week after this happening, and that he had to quit

because of the condition of his head; this testimony is refuted by the foreman who was produced by the respondent, and who testified that the man did his regular laboring work, and more important, it was shown by records of the company that there was no sweeping work available at that particular time.

More important, the respondent produced the records and witnesses from another company, not a party to this suit, which indicated that the petitioner worked for a period of approximately six weeks as a laborer during the fall of 1937. In my opinion, impartial testimony of this character should be given great weight as against the petitioner's testimony that he has been unable to work.

I am further impressed by the medical testimony of the doctors produced by the respondent, namely Dr. J. M. Silverstein, the attending physician, and the three experts, Dr. Andrew C. Ruoff, Dr. Jack Blumberg and Dr. Lewis H. Loeser. These doctors appeared before me frequently, and I know from my experience that they are reluctant to brand a man as a malingerer unless they have very good reasons for doing so. These doctors conducted a number of tests which were described in great detail by Dr. Loeser in his testimony. The result of these tests led the doctors to believe that the petitioner was unquestionably attempting to deceive the examiners in that his responses to repeated tests of the same type were contradictory and also complaints that he registered particularly with reference to his vision were physiologically impossible.

The burden of proof of establishing his claim is on the petitioner, and I find from the greater weight of evidence that the petitioner has failed to sustain this burden. I find that the weight and quality of the medical testimony presented by the respondent outweighs that of the petitioner's medical testimony. In reaching this conclusion I do not wish to appear to be reflecting upon or criticizing the judgment or ability of the petitioner's doctors. I feel that the petitioner by his course of action, inaccurate history and exaggeration of his complaints misled the doctors into reaching an incorrect conclusion.

I, therefore, find that the allowance already paid the petitioner is adequate and that he is entitled to no further compensation. I further find as a fact that the petitioner has not suffered a brain injury which has produced any disability.

It is, therefore, on this 15th day of February, 1939, ordered that the petition be, and the same is hereby dismissed.

JOHN J. STAHL,
*Deputy Commissioner.*